New Jersey Power and Light Company, a corporation, respondent,

*v.*

Mildred D. Buck and Howard H. Buck, defendants-appellants.

[Submitted May term, 1934. Decided September 27th, 1934.]

*Mr. George M. Shipman, Jr.,* for the complainant-respondent.

*Mr. William D. Ward, Mr. Albert H. Holland* and *Mr. John Milton,* for the defendants-appellants.

The opinion of the court was delivered by

Kays, J.

This is an appeal from a decree of the court of chancery.

The complainant, a public utility corporation, filed its bill in the court of chancery against the defendants on January 4th, 1932, which was amended on January 29th, 1932. The bill asked for a rescission of a contract entered into between the parties on October 27th, 1927. The contract provided for the acquisition of a right of way one hundred and fifty feet wide across lands of the defendants in Morris county. It appears that the complainant below was acquiring a right of way for an electric transmission line through a very rough and hilly part of Morris county. The right of way was crudely marked by stakes at the time negotiations were had between the parties. The evidence discloses that agents of the complainant below went with Mr. Buck to a point where the proposed right of way crossed the railroad track. At this place, it is claimed, Mr. Buck stated that he and his wife owned the land and said, "yes, you are on my ground all the way up the hill," and further said that his land continued and joined with Farny's land over whose land the right of way extended. It appears that Mrs. Buck, the wife of Mr. Buck, owned the land at the place where the above-mentioned parties were standing and also that she owned land which continued to a place where the right of way entered Farny's land. It also appears that there was a gore which ran along and included part of the proposed right of way for a distance of about five hundred feet which was owned by one Kitchell.

The distance from the point where the parties stood on the above mentioned occasion to the Farny line was about seventeen hundred feet. Mrs. Buck's land adjoined the place where the parties were standing and also adjoined the Farny line. The complainants had no title search made, prepared a deed for the grant of the right of way, without covenants, seventeen hundred and fifty-one feet long and one hundred and fifty feet wide, accepted the deed from Mrs. Buck and her husband and paid $8,000 for the conveyance. The agreement or grant of the right of way contains the following description of the property: "The grantor hereby conveys to the grantee, its successors and assigns, an easement, right, privilege and right of way of the width of one hundred and fifty feet, upon, over and across the lands of the grantor situated in the borough of Morris Plains, county of Morris, and State of New Jersey described as follows: Lines enter land of grantor from land of George W. Farny, thence continues in an easterly course for a distance of approximately seventeen hundred and fifty-one feet (1,751 feet) to land now or formerly owned by the Morris Traction Company." As before stated the title to this property was in the name of Mrs. Buck. Buck was taken to a place on the railroad track, or as he says, to the line of the Morris County Traction Company and testified that while standing there he did not point out any particular right of way referred to as being on the Buck property. From the above description of the right of way it might have been entirely situated on Mrs. Buck's land. The testimony of all of complainant's witnesses, with probably one exception, is very meager as to the conversation which took place between them and Mr. Buck respecting this right of way. Bell, one of complainant's employes, says, however, that Buck stated this land ran up the hill until it touched Farny's line. This was true. It may be that Buck understood the right of way on Mrs. Buck's property as the country was very hilly and wooded and from the position in which it was admitted Mr. Buck and the company's employes stood it would be impossible to see the entire right of way line. After accepting the

deed the complainant constructed its towers, strung its wires and entered into the full use of the land as provided in the grant. On July 3d, 1931, the attorney of Mr. Kitchell notified the complainant company that some of the towers and power line occupied lands belonging to Mr. Kitchell. On December 11th, 1931, an attorney of the complainant wrote Mrs. Buck stating that he thought the agreement should be set aside and the consideration returned to the company and threatened to bring condemnation proceedings. This appears to be the first intimation that defendants had concerning the complainant's claim. After hearing the testimony the vice-chancellor advised a decree rescinding the grant of the right of way upon condition that the complainant institute proceedings to acquire by eminent domain the land occupied by the complainant company and upon certain conditions therein made.

The vice-chancellor reached this conclusion on the ground that a mutual mistake had been made. We are of the opinion that the vice-chancellor erred in this respect for the reason that the testimony is not convincing that a mistake had been made on the part of Mrs. Buck, the owner of the land. Even assuming that Mr. Buck was acting as her agent his testimony and the testimony of the witnesses of the complainant company is not sufficiently clear and convincing to justify the setting aside of the grant on the grounds that a mutual mistake had been made. It seems that the negotiations were very casual. Mr. Buck was brought to a place which overlooked part of Mrs. Buck's property and the conversation above referred to took place in this particular location. There were no fences, monuments or markers on the ground which indicated the boundary line between the property of Mrs. Buck and the property of Mr. Kitchell, nor was there a sufficient designation which was apparent or discernable from the place where Mr. Buck stood which would indicate the exact location of the proposed right of way. As above indicated the right of way might easily be situated entirely on the property of Mrs. Buck according to the description contained in the

grant. On the other hand the company made no title search, made no survey of the boundary line between Mrs. Buck's and Mr. Kitchell's properties and evidently assumed that they had made a survey for a right of way which was entirely situated on Mrs. Buck's land. There is no evidence that the price paid for the land acquired of defendant was excessive. It may be that the complainant erred when it did not construct its power line entirely on the property of Mrs. Buck under her grant to it, but such mistake could not be charged against her. Complainant prepared the deed, was given permission to survey the boundaries of defendants' property and accepted a grant containing no covenants as to title. No relation of confidence existed between the parties and no fraud appears in the case. Courts will not aid a purchaser of real estate under such circumstances. The doctrine of *caveat emptor* applies and in the absence of fraud, failure or defects in title are not grounds for relief.

For the reasons above stated the decree under review will be reversed.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 13.